**United States District Court**
**Northern District of Georgia**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 29 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

Corbin Leroy Young
5530 Campbellton Rd.
City of South Fulton, GA 30331
**PRO-SE PLAINTIFF**

**vs**

Civil Action No: 1:25 -CV- 7 4 1 0

**JURY DEMANDED**

Fannie Mae (Federal National Mortgage Association)
Citizens Bank, National Association
MERS (Mortgage Electronic Registration Systems, Inc.)
**DEFENDANTS**

**DATE: December 29, 2025**

## COMPLAINT w/ JURY DEMAND

----------------------------------------------------------------------------------------------------

## INTRODUCTION

Fannie Mae is a "government agency" masquerading as a publicly traded corporation foreclosing on American homes in violation of the 5th Amendment.

Comes now Plaintiff Corbin Leroy Young ("Young") of Atlanta Georgia in the above-styled action and files this complaint against Federal National Mortgage Association ("Fannie Mae"), Citizens Bank; National Association ("Citizens") and Mortgage Electronic Registration Systems, Inc. ("MERS") under independent and overlapping causes of action on the subject matter of real estate. Such causes of action are namely questions of fact pertaining to multiple ownership and

foreclosure rights in that all three defendants are claiming ownership and the right to foreclose on Young's residential home and property of 5530 Campbellton Rd SW, City of South Fulton GA 30331 ("5530 Campbellton").

Additionally, this complaint contains questions of fact regarding the issue of the U.S. government being in control of and being an equitable profit receiving owner of Fannie Mae.  Such government control and ownership precludes Fannie Mae from foreclosing on 5530 Campbellton (or any American home for that matter) due to violations of the 5th Amendment right protecting homeowners from government seizure without due process of law and just compensation.

Also does such power and influence that Fannie Mae has in and over the markets and lending institutions and government connectivity and affiliation constitute monopoly and antitrust violations when viewed from the context of its failure to provide homeowners with every avenue of payment options in order to avoid and exit default or foreclosure, namely the ability for borrowers to make partial payments. 15 U.S.C.

Currently Fannie Mae is being controlled illegally by a single government employee in violation of 12 U.S.C. § 4512(g)(2) making any foreclosure action is illegal.

Additionally, Fannie Mae has failed to implement some type of dynamic secondary market Investor-Homeowner platform whereby "delinquent" homeowners can readily and easily tap into investor funding to cure such delinquency in "real time" without being held hostage to the subjective reviews of loan modifications.

Additionally, the current system whereby a homeowner faces foreclosure on not only the principal and interest due but also land taxes, insurance and municipal services is unconscionable.  A multi account solution is needed.

## GOVERNING RULES

Any references made to O.C.G.A. (Official Code of Georgia) are made pursuant to U.S. Code 28 § 1652 State Laws as Rules of Decision.

The lawsuit portion involving Antitrust and monopoly issues was brought under the American Rule and brought pursuant to O.C.G.A. 9-15-14(c).

## JURISDICTION

This court holds jurisdiction over this case due to diversity and because the amount in controversy exceeds $75,000. The subject property being located in the state of Georgia and defendants' being incorporated within the state of Delaware. The underlying property of this complaint having a claimed loan balance in excess of $300,000. The value of this property in sight of municipal comprehensive planning being in excess of $12 million.

## TABLE OF CONTENTS

1. Introduction; Parties to the complaint and general subject matter ..............1
2. Governing Rules ……………………………………………….………………..3
3. Jurisdiction and Venue………………………………………………...……..3
4. Table of Contents ……………………………………………………….……..3
5. Exhibits Filed with Complaint ………………………………………….……..4
6. Background ……………………………………………………………….…....4
7. Causes of Action Elements – Summary of Claims………………………….5
8. Arguments of Causes of Action -Fannie Mae………...………………… 9
9. Why is allowing partial payments so important? …………………….………17

10. Why is an Investor-Borrower delinquency financing system important?.18

11. Fannie Mae's Existing Fortification Strategy to Privatization ….……….19

12. What is the means test for passing the threshold of being a government agency? ……………………………………………………………....19

13. Requested Relief.………………………………………….…………….20

14. Font Certification.…………………………………………...………..21

15. Jury Trial Demand with attached Jury Trial Demand …………….…..21

16. Contact Info ……………………………………………………………22

## EXHIBITS FILED w/ COMPLAINT

**Exhibit A:** Fannie Mae Letter of Purchase of 5530 Campbellton Rd SW City of South Fulton, Georgia 30331 (1 page)

**Exhibit B:** Fannie Mae's Loan Lookup Printout of 5530 Campbellton Rd SW City of South Fulton, Georgia 30331 (1 page)

**Exhibit C:** Fannie Mae's 3rd quarter 2025 financial report payment to government (1st and 7th page) (2 pages)

**Exhibit D:** AI (Artificial Intelligence) Overview of 12 U.S.C. § 4512(g)(2) (2 pages)

## BACKGROUND

a. Young obtained a home loan from United Mortgage Corp. (the original lender) on February 13, 2024.

b. The Security Deed and Note was assigned to MERS at the closing of the loan on February 13th 2024 as Nominee for any future transferees.

c. On March 1, 2024 United Mortgage Corp. transferred all of its interests in the

property to Citizens Bank with the purchase of the loan.  It is assumed that this assignment still kept MERS as the Nominee because no transfer deed was placed on Public Records with the Clerk of Superior Court Fulton County.

d.  On April 9, 2024 Fannie Mae notified Young that they purchased the loan on March 25, 2024 from Citizens Bank and that Citizens Bank was now the loan servicer. **EXHIBIT A.**

e.  Fannie Mae's loan lookup tool dated December 29, 2025 shows that Citizens is the loan servicer. **EXHIBIT B**.  It is assumed that this assignment still kept MERS as the Nominee because no transfer deed was placed on Public Records with the Clerk of Superior Court Fulton County.  Fannie Mae also stated in said letter that they were not going to be recording the transfer on public record.

f.  The foreclosing law firm Rubin Lublin has identified Citizens as the last transferee and is seeking to foreclose in Citizens name thus claiming the Citizens is the owner of the deed (via MERS) and the note.  They make no mention of Fannie Mae owning the loan in any communications to Young or in any public filings which is a violation of Young's due process rights in not revealing who the true owner.  They seek to foreclose on Tuesday January 6, 2025.

## --------- CAUSES OF ACTION ELEMENTS – CLAIMS SUMMARY -----------

### <u>FANNIE MAE</u>

Fannie Mae announced ownership of the deed and note, **EXHIBIT A**, and seeks to foreclose on 5530 Campbellton via its loan servicer Citizens Bank, **EXHIBIT B**.

- a.  Fannie Mae is barred from foreclosing on 5530 Campbellton because doing so is a violation of 5th amendment of U.S. Constitution.

b.  Fannie Mae is barred from foreclosing on 5530 Campbellton because it has breached Young's contract by not directing Citizens to accept partial payments and instead left such determination to Citizens. **EXHIBIT A.** Citizens has refused to accept partial payments and has thus refused payment thus breaching their contractual obligations to accept payment. The payment stipulations of the note and the deed conflict with one another.

c.  Fannie Mae is barred from foreclosing on 5530 Campbellton because Citizens and MERS simultaneously are also claiming ownership.  Such foreclosure is a violation of Young's due process rights of the 5th amendment.

d.  Fannie Mae is barred from foreclosing on 5530 Campbellton because in any foreclosure there can only be one legal entity who has the right to foreclose and from a public recording viewpoint, MERS has half of that right via only the security deed and MERS has not initiated any foreclosure proceedings.

e.  Fannie Mae is barred from foreclosing on 5530 Campbellton because it violates U.S. and state of Georgia Antitrust laws.  Specifically, elements of the Sherman Act.

f.  Fannie Mae is barred from foreclosing on 5530 Campbellton because it violates U.S. and state of Georgia Monopoly laws.  Specifically, elements of the Clayton Antitrust Act.  If it's not operating as a pure monopoly then it operates as a duopoly in connection with its sibling firm the Federal Home Loan Mortgage Corporation ("Freddie Mac").

g.  Fannie Mae is barred from foreclosing on 5530 Campbellton because Fannie Mae is being controlled illegally by a single government

employee in violation of 12 U.S.C. § 4512(g)(2) and making any foreclosure action illegal. **EXHIBITS D1 & D2.**

h. Fannie Mae is barred from foreclosing on 5530 Campbellton because its contract method of foreclosing not only because a borrower fails to pay the principal and interest due but also land taxes, insurance and municipal services not yet due which is wrapped into the monthly payment is unconscionable. Such is due to a significant imbalance of contracting power, it is procedural unconscionable and foreclosure due to such is substantive unconscionable.


## **CITIZENS BANK with ARGUMENT**

Citizens Bank claims ownership of the deed and seeks to foreclose on 5530 Campbellton.

a. Citizens is barred from foreclosing on 5530 Campbellton because it has breached Young's contract by not allowing Young to make partial payments. The payment stipulations of the note and the deed conflict with one another. Claim: Breach of Contract.

b. Citizens is barred from foreclosing on 5530 Campbellton because Fannie Mae and MERS simultaneously are also claiming ownership. Such attempted foreclosure is a violation of Young's due process rights of the 5th amendment. Claim: Lack of Legal Standing.

c. Citizens Bank is barred from foreclosing on 5530 Campbellton because in any foreclosure there can only be one legal entity who has the right to foreclose and MERS has half that right and has not initiated foreclosure. Claim: Divided Legal Interest.

    d. Citizens as the loan servicer has failed to deliver specific notices to Young, specifically notice of the true owner (Fannie Mae) and acceleration notices.  Claim: Due Process of Law Violation.

## MERS WITH ARGUMENT

MERS has ownership of the deed which stipulates that it has rights to foreclose of 5530 Campbellton.

    a. MERS is barred from foreclosing on 5530 Campbellton because Fannie Mae and Citizens simultaneously are also claiming ownership.  Such foreclosure is a violation of Young's due process rights of the 5th amendment.  Claim: Lack of Legal Standing.

    b. MERS is barred from foreclosing on 5530 Campbellton because in any foreclosure there can only be one legal entity who has the right to foreclose. Claim: Divided Interest.

    c. MERS has not initiated any foreclosure proceedings.  Claim: Failure to execute any legal action.

## FANNIE MAE, CITIZENS AND MERS

A cause of action for collusion and/or conspiracy between one or more of the Defendants is dependent on their answers to this complaint and shall be addressed in Plaintiff's response to Defendants' answers.  Such is necessary because the nominee system although hailed as efficient for lenders can lend itself to deception in that the true owner can remain hidden and unknown thereby affecting a borrower's due process rights through intentional or unintentional acts that may mirror a 3 man shell game of sorts.

-------------ARGUMENTS TO CAUSES OF ACTION ELEMENTS--------------

## FANNIE MAE

a. Fannie Mae is barred from foreclosing on 5530 Campbellton because doing so is a violation of 5th amendment of U.S. Constitution.  The 5th amendment expressly states:

> **No person shall** be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor **be deprived of** life, liberty, or **property, without due process of law; nor shall private property be taken for public use, without just compensation.**

Thus "No person shall be deprived of property without due process of law; nor shall private property be taken for public use, without just compensation" aptly applies to this case.

**Fannie Mae is a "government agency" masquerading as a publicly traded corporation.**  Fannie Mae was created in 1938 during the Great Depression.  The corporation's purpose is to expand the secondary mortgage market by securitizing mortgage loans in the form of mortgage-backed securities (MBS) allowing lenders to reinvest their assets into more lending and in effect increasing the number of lenders in the mortgage market by reducing the reliance on locally based savings and loan associations aka "thrifts". Its brother organization is the Federal Home Loan Mortgage Corporation known as Freddie Mac.  Freddie Mac was created in 1970 mainly to dilute the monopoly that Fannie Mae held. Fannie Mae and Freddie Mac are essentially merged back together once again due to their chairperson seats being occupied the same person, the

director of Federal Housing Finance Agency in violation of 12 U.S.C. § 4512(g)(2). **EXHIBITS C1, D1 and D2.**

About Us Statement taken from fhah.gov
The Federal Housing Finance Agency (FHFA) is an independent agency established by the Housing and Economic Recovery Act of 2008 (HERA) and is responsible for the effective supervision, regulation, and housing mission oversight of the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), and the Federal Home Loan Bank System, which includes the 11 Federal Home Loan Banks (FHLBanks) and the Office of Finance (OF). The Agency's mission is to ensure that Fannie Mae and Freddie Mac (the Enterprises) and the FHLBanks (together, "the regulated entities") fulfill their mission by operating in a safe and sound manner to serve as a reliable source of liquidity and funding for housing finance and community investment. Since 2008, FHFA has also served as conservator of Fannie Mae and Freddie Mac.

About Us Statement taken from fanniemae.com
Our Single-Family business helps homebuyers purchase and refinance homes. We support mortgage lenders by acquiring the mortgage loans they originate. We package loans we acquire into mortgage-backed securities (MBS) that we guarantee, attracting investors to the U.S. secondary mortgage market. Our financing solutions enable lenders to offer 30-year, fixed-rate mortgages, which provide homeowners stable, predictable mortgage payments over the life of their loans.
We develop and maintain underwriting and eligibility standards for Fannie Mae loans. Most of the single-family loans we acquire are assessed by Desktop Underwriter® (DU®), our proprietary single-family automated underwriting system. We also establish servicing standards, including borrower assistance options for homeowners experiencing financial distress.

Fannie Mae although not legally a government agency actions prove otherwise.

1. Fannie Mae receives its funding from the government (U.S. Treasury).

2. The U.S. Treasury is an equitable owner of Fannie Mae.

3. Fannie Mae collects profits and sends them to the government (U.S. Treasury). **EXHIBITS C1 and C2.**

4. Fannie Mae collects revenues from foreclosures and sends some or all of them to the government (U.S. Treasury) or keeps some or all of them to reinvest into new mortgage purchases in which such profits are sent to the government.

5. Fannie Mae is ultimately controlled by the government via its current existence within Federal Housing Finance Agency's ("FNFA") conservatorship.  The director of the FNFA serves as chairman of both Fannie Mae (and simultaneously Freddy Mac) which is illegal pursuant to 12 U.S.C. § 4512(g)(2) Limitations which states;

> Director and each of the Deputy Directors may not hold any office, position, or employment in any regulated entity or entity-affiliated party..

Fannie Mae is operating illegally and thus such foreclosures are illegal.  **EXHIBITS D1 and D2**

6. Fannie Mae issues directives to banks and mortgage companies originating loans and if such directives are not followed Fannie Mae can choose not to purchase their loans.  One such directive was;

> Fannie Mae Cancels First Time Homebuyer Program: Special Purpose Credit Programs Canceled
> Fannie Mae's decision to cancel its Special Purpose Credit Programs (SPCPs), which support First-Time Homebuyer initiatives, has sent ripples across the real estate world.   As of March 25, 2025, the Federal Housing Finance Agency (FHFA) directed Fannie Mae and Freddie Mac to end all SPCPs, effectively eliminating down payment and closing cost assistance for first-time and low-income buyers.
> Source: Timothy Hellstern - Pearson Realty Group,  March 26, 2025,

7.  Most mortgage contracts utilize Fannie Mae's contract forms. As said above in Fannie Mae's statement "We develop and maintain underwriting and eligibility standards for Fannie Mae loans." Thus in order for a lender's loan to possibly qualify for a Fannie Mae acquisition it is encouraged that it be on a Fannie Mae form. This is monopoly power.

8.  The government owns and is a beneficiary of Fannie Mae. The elements of ownership include the right; to acquire, to profit, to distribute a benefit and the right to dispose. Fannie Mae is thus acquiring loans, profiting from these loans, distributing a benefit to the U.S. Treasury in the form of dividend payments and disposing of loans by foreclosing on American homeowners. By foreclosing on American homeowners, taking such foreclosure proceeds and paying the U.S. Treasury which in then turn pays America's expenses they are essentially taking private property for public use without just compensation to the homeowner. The "just compensation" being the difference between the loan balance and the value (i.e. equity) or ultimate value in the property. The ultimate value of 5530 Campbellton is $12 million. Eight, 4 story 5,000 net square foot single family homes on eight 4,000 sf lots at $300 per square foot is the development intention.

b.  Fannie Mae is barred from foreclosing on 5530 Campbellton because it has breached Young's contract by not directing Citizens to accept partial payments and instead left such determination to Citizens. **EXHIBIT A.** Citizens has refused to accept partial payments and has thus refused payment thus breaching their contractual obligations to accept payment.

The payment stipulations of the note and the deed conflict with one another.  This is the Fannie Mae/Freddie Mac -Uniform Instrument Form 3200 Multistate Fixed Rate Note -Single Family and Georgia (MERS) Deed Form 3011.  Whereas the Note allows for other payment options in lieu of the "whole" monthly payment the Deed allows the Lender, and in this case, Fannie Mae allowing the Loan Servicer (Citizens) to choose what type of payments it will accept.

Also due to the power imbalance at contract signing a borrower not being allowed to make partial payments is an abuse of power.

Above a car purchase, a home loan is one of the biggest purchases that a person will make in their lifetime.  Without financing, for most persons, the act of saving money while living and providing for themselves and/or their family at the same time would be an insurmountable task.  Thus reliance upon an institution of financing puts the everyday person in a dependency position.  This dependency position contrasted with the institution of financing's position is where the imbalance of power is created.  The borrower then has no choice but to sign a contract whereby the lender (or loan servicer) can choose whether to accept partial payment or not.

c.   Fannie Mae is barred from foreclosing on 5530 Campbellton because Citizens and MERS simultaneously are also claiming ownership.  Such foreclosure is a violation of Young's due process rights of the 5th amendment.  Thus Fannie Mae lacks absolute and clear legal standing to foreclose.

d. Fannie Mae is barred from foreclosing on 5530 Campbellton because in any foreclosure there can only be one legal entity who has the right to foreclose and from a public recording viewpoint, MERS has half of that right via only the security deed and MERS has not initiated any foreclosure proceedings. Thus Fannie Mae lacks absolute and clear legal standing to foreclose.

e. Fannie Mae is barred from foreclosing on 5530 Campbellton because it violates U.S. and state of Georgia Antitrust laws. Specifically, elements of the Sherman Act. 15 U.S.C 1 states in part

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

The trinity formation connected via a single employee of the Federal Housing Finance Agency and chair seat within both Fannie Mae and Freddie Mac forms such conspiracy and monopoly which restrains the trade of other private corporations who are unable to access the vast amount of government funding to purchase property as does Fannie Mae and Freddie Mac.

f. Fannie Mae is barred from foreclosing on 5530 Campbellton because it violates U.S. and state of Georgia Monopoly laws. Specifically, elements of the Clayton Antitrust Act, 15 U.S.C. 12-27. If it's not operating as a pure monopoly then it operates as a duopoly in connection with its sibling firm the Federal Home Loan Mortgage Corporation ("Freddie Mac"). Fannie Mae violates The Clayton Act's areas of:

1. Interlocking directorates, in that the same person makes business decisions for competing companies. Fannie Mae and Feddie Mac are competing companies and were originally intended to compete via Freddie Mac's creation.

2. Conditioning sales on exclusive dealings. Fannie Mae's purchase of mortgages from lenders with government money is predicated on the loan being on their forms and subscribing to their standards.

3. Serving on the board of directors (or positions) for two competing companies.

4. Mergers and acquisitions which substantially reducing competition. It can be said that since the director sits within Fannie Mae and Freddie Mac a merge has occurred which has made allowed them to purchase more loans in rapid fashion since March 2025.

g. Fannie Mae is barred from foreclosing on 5530 Campbellton because Fannie Mae is being controlled illegally by a single government employee in violation of 12 U.S.C. § 4512(g)(2) making any foreclosure action is illegal. **EXHIBIT D and D1.**

h. Fannie Mae is barred from foreclosing on 5530 Campbellton because its contract method of foreclosing not only because a borrower fails to pay the principal and interest due but also land taxes, insurance and municipal services which is wrapped into the monthly payment not yet due is unconscionable. Such is due to a significant imbalance of contracting power, its procedural unconscionable and foreclosure due to such is substantive unconscionable.

A homeowner borrows a principal amount for a loan. Interest is owed to the lender on this principal amount and likewise the lender may owe their own lender principal or principal and interest on the loaned money. This is the maximum extent of the trade between money and product (house/land) and the requirement for prompt payment is a necessity. Beyond principal and interest or just interest payments lie mandatory but a non-immediate costs. These non-immediate costs are typically homeowner's insurance which protect the lender, taxes which protect the property from tax foreclosure and other costs such as sanitation. Such non-immediate costs can add anywhere from a few hundred dollars to a few thousand dollars to a monthly mortgage note. If a homeowner runs into challenging times and the monthly mortgage note is $2,500 a month but the principal and interest is $2,000 a month, the homeowner's principal and interest payment of $2,000 gets rejected because it's a partial payment in the eyes of the lender. After this the penalties and interest grow leading to default and possibly into foreclosure. Tax payments are due once a year, typically around the end of the year. In many jurisdictions up to 2 years are required to pass before tax foreclosure action can take place. Insurance payments are due once a month and can be paid months in advance up to 12 months. What if the homeowner wanted to pay the tax with a Christmas bonus. What if the homeowner wanted to pay a years worth of insurance with their tax return. One can see that when it comes to non-immediate costs there are flexible gaps in time. Leading a homeowner into foreclosure because a lender wanted a partial tax payment in March which is not due until December is unconscionable. Leading a homeowner into foreclosure because a lender wanted next years insurance payment this year is

unconscionable.

A viable solution is a multi-account mortgage whereby there are 4 or 5 accounts within a single master account.  An interest account, a principal account, an insurance account, a tax account and maybe a municipal services account.  Because Fannie Mae is a monopoly and directly attached to the government which controls the economy and thus affecting American's livelihood, it paramount that a maximum system of payment flexibility be introduced to balance out these economic unknowns.  Such system will add to the financial security of America if the day arrives that a simultaneous global attack on the energy and currency sectors materialize.

## QUESTIONS AND ANSWESRS?

### 1. Why is allowing partial payments so important?

Partial payments are not a trivial matter.  Partial payments are mentioned in the contract, the deed and the notices of ownership transfer so these appearances highlight some sort of intrinsic importance.  Allowing or disallowing partial payments can mean the difference between a homeowner making timely mortgage payments or falling into default and furthermore into foreclosure.  There are real world examples of how when companies accept and also payout partial payments, bills and expenses are satisfied on time.

Electric power companies represent the perfect example of how a "pay what you can" system can do for anyone at any income level.  Instead of the electric customer running into a brick wall with a $300 electric bill at the end of the month, the electric customer has the option to make a $10 or more a day payment.  Such minimum payment allows even those with a minimum income to survive day to

day.  Does the electric company loose money by handling a higher volume of payments from just one small customer.  No.  In fact they make more money.  A $3.50 processing charge on a $10 payment represents a 35% markup.  If in the extreme a customer were to do this everyday such would be an extra $105 to the electric company.  It must be remembered that all of these systems from payment to power cutoff to power restore are all automated with no human interaction so any argument that such a payment system consumes financial resources fail.

Likewise, companies that make daily payments to an employee allow that employee to take care of bills and expenses without incurring service cutoffs, late fees and negative reporting to their credit.  As one can deduce from these scenarios, payment timing is ultimate factor to paying on time.

The mandatory application to the mortgage industry of allowing partial payments is vital to reducing the number of foreclosures.  It will not only benefit the homeowner but also the lender.  There are many families who live in hotels or extended stay hotels that pay $100 plus a day for a 1 bedroom, 1 bath suite with an optional kitchenette.  This represents a $3,000 a month payment which can be equivalent to a $300,000 mortgage.  Being late for 1 month represents a $3,000 barrier, 2 months a $6,000 barrier, 3 months a $9,000 barrier and 4 months a $12,000 barrier.  At some point in this 120 day window the barrier for many becomes impossible to cross.

Due to Americans having a negative savings rate and due to the fact that at 30 days late a negative payment is placed on one's credit report possibly hindering access to credit, only an outside cash infusion will bring the account current. Regardless of whether a person holds a low paying 5 figure job on through a high 6 figure job they most likely have a mortgage and eventually in life run into financial difficulties.  Anything can change at any moment and this is exactly why a flexible

pay what you can system is necessary.  I believe that if Fannie Mae and the mortgage industry were using a pay as you go payment system during the "financial crisis" of 2008 that either it would have been less severe or not occurred at all.

## 2.  Why is an Investor-Borrower delinquency financing system important?

Taking people's homes while limiting their payment flexibility options – just because – is unethical.  Computers allow for any type of payment system to exist. The main purpose of home ownership is having a place of refuge.  With mortgages, over time homeowners build value in the form of equity whether through paying down the principal owed or an increase in the house's value.

Utilizing a similar type of nominee system that MERS operates on, a 2nd or 3rd lien system can easily be created that will allow investors to move in and out of an investment with a delinquent homeowner while being protected.  The result is that homeowners can temporarily utilize their equity and keep their home, lenders get paid on time, investors make a profit and foreclosures only happen when a person just really does not want their home anymore or just really can't overcome.

## 3.  Existing Strategy.

Currently Fannie Mae's strategy is to stockpile profits so that a scenario like 2008 does not repeat itself and to allow it be become a company operating independently of the government again.  This is not an end all solution as it is a post loss solution that's designed to loose and not a loss prevention solution.  Increased screening of potential borrowers for risks in terms of credit and jobs is also not an end all solution because people can be employed one day a loose their jobs the next day, plus it reduces access to homeownership.  Just look at all those Federal workers who felt they had a safe job and the next thing you know they were fired just because of a prerogative.  An end result that produced no gains but only losses for

the American economy. And look at AI (Artificial Intelligence) and how many low, middle and high paying jobs have been and will be eliminated. Thus as one can see the core solution lies not before or after the fact but in the middle, during the duration of the 30 or so years the loan is in effect. Partial payment options and access to an Investor-Borrower funding platform is the optimum solution.

**4. What is the means test for passing the threshold of being a government agency?**

Is Fannie Mae a government agency or more clearly presented, at what point did Fannie Mae become a government agent. Did Fannie Mae become a government agent when it was created in 1938. Did it become a government agent when it went into conservatorship in 2008. Did it become a government agent when the U.S. Treasury took equity ownership in it. Did it become a government agent when payments from profits started to be made to the U.S. Treasury. Did it become a government agent when it told banks to stop incentive programs for new homebuyers in March of 2025 and before. Did it become a government agent when the Director position in the Federal Housing Finance Agency became chairperson of Fannie Mae in March of 2025, thus becoming chairperson of Fannie Mae and creating that vital affiliation link to the rest of the government necessary for Fannie to "officially" become a government agency.

## REQUESTED RELIEF

Fannie Mae, Citizens and MERS have all chosen to engage in an obscure real estate filing system which has the structural capacity to switch ownership without notice to the borrower which can effectively deprive a borrower of both U.S. and state constitutional rights to due process in what is essentially a 3 man shell game

scheme of sorts. Additionally, the lack of acceptance of partial payments, publishing such purported default worldwide prior to statutory permissions of Georgia Foreclosure Laws and in violation of Consumer Credit Protection Laws while reporting all of such to credit bureaus has hindered Young from raising capital and/or acquiring credit to satisfy such rejected partial monetary payments. Therefore, the relief that is request is as follows:

1. That the security deed and note incumbering 5530 Campbellton Rd SW South Fulton GA 30331 be cancelled and cancelled from any enforcement by any of the named defendants or their successors or assigns if any portion of this lawsuit is disputed by any Defendant.

2. That if Plaintiff brings on an attorney and attorney fees are requested that attorney fees and/or attorney consultation fees are granted.

3. That punitive damages be awarded to Plaintiff.

4. That any other just damages be awarded to Plaintiff.

5. That any and all expenses and costs associated with this matter be awarded to Plaintiff.

6. That if security deed and note in relief #1 is not cancelled that any claimed delinquent payments are placed at the back of the loan with Young continuing a monthly payment (less taxes, sanitation and insurance) in the amount of $2,136.45, which is the original payment amount.

7. That if one or more Defendants wish to further this lawsuit and even on to jury trial, that $12 million in combined damages, penalties, compensation, etc. is awarded to Plaintiff.

8. That a moratorium on all U.S. foreclosures be in effect immediately and all mortgages must accept partial payments from borrowers starting within 30 days after a missed payment due date.

9.  That within 6 months of relief number 8 that Fannie Mae launches an Investor-Homeowner platform which will allow borrowers to finance any delinquent mortgage payments.

10.  That within 6 months of relief number 8 that Fannie Mae launches a multi account system that allows borrowers to pay and fund separate interest, principal, insurance, tax and municipal fee accounts.


## **FONT CERTIFICATION**

14 point Times New Roman Font pursuant to LR 5.1(C)


## **JURY TRIAL DEMANDED**

7th Amendment. In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.


Respectfully Submitted,

_____    date Dec 29,2025

pro-se

Corbin Leroy Young

5530 Campbellton Rd

City of South Fulton, GA 30331

770-845-5487

corbinlyoung@outlook.com

# United States District Court
# Northern District of Georgia

Corbin Leroy Young
5530 Campbellton Rd.
City of South Fulton, GA 30331
**PRO-SE PLAINTIFF**

**vs**                                      Civil Action No: _____

**JURY DEMANDED**

Fannie Mae (Federal National Mortgage Association)
Citizens Bank, National Association
MERS (Mortgage Electronic Registration Systems, Inc.)
**DEFENDANTS**

### JURY DEMAND

Comes now Plaintiff in the above-styled action and files this Demand for Jury
Trial.

Respectfully Submitted,

_____ date Dec 29, 2025
                                                      pro-se
                                               Corbin Leroy Young
                                               5530 Campbellton Rd
                                        City of South Fulton, GA 30331
                                                  770-845-5487
                                            corbinlyoung@outlook.com

*Exhibit A*


**Fannie Mae**

April 9, 2024


29

Corbin Young
5530 Campbellton Rd SW
Atlanta, GA 30331-7718

# Notification: Fannie Mae has purchased your mortgage loan

### For your information only — you are not required to take any action

We'd like to welcome you as a homeowner with a Fannie Mae-owned mortgage loan and inform you that we purchased your first lien loan for 5530 CAMPBELLTON ROAD SW with an original principal balance of $305,550.00 from Citizens Bank, National Association on 03/25/2024. This is a common practice that helps banks and other lenders replenish their funds so they can continue to make new mortgage loans.

Our ownership of your loan does not affect any term or condition of the note, mortgage, or deed of trust.

We suggest keeping a copy of this notice with your mortgage records so that you know who owns your loan. The transfer of ownership was not publicly recorded.

### What you need to know

- You don't need to take any action because of this notice.

- Fannie Mae routinely purchases mortgage loans like yours to help keep affordable financing available for the housing market.

- Your mortgage servicer is a separate company that collects your payments, provides customer service, and is your primary point of contact.

- Please do not send mortgage payments to Fannie Mae.

- Get answers to frequently asked questions about this notice at **KnowYourOptions.com/notice**

## Your mortgage servicer handles all your mortgage needs

Your servicer is the company that administers your loan, processes your monthly payments, and provides customer support. *Fannie Mae is not your mortgage servicer.*

Your servicer as of the date we purchased your loan is CITIZENS BANK, NATIONAL ASSOCIATION at 10561 TELEGRAPH ROAD, GLEN ALLEN, VA, 23059-4577 or 1-800-234-6002. They may also have a website with helpful information.

⚠ We have given your servicer the authority to act on our behalf. All payments and inquiries about your mortgage loan should be addressed to your servicer.

**Partial Payments:** If you make a payment that is less than the full amount due for your regularly scheduled monthly payment ("partial payment"), your servicer:

→ May accept a partial payment and apply it to your loan,

→ May accept a partial payment and hold it in a separate account until you pay the rest of the payment, and then apply the full payment to your loan, or

→ May not accept any partial payments.

If your loan is sold, your new lender (and/or servicer) may have a different policy. If you have specific questions regarding the acceptance of partial payments, please contact your servicer.

**Owning a home is an opportunity to build memories, community, and financial well-being. We're here to help.**

## Fannie Mae is here to help

Along with your servicer, we're committed to your successful homeownership. Visit us at **KnowYourOptions.com** or download the **Fannie Mae App** at Google Play or the Apple App Store for helpful resources, including access to expert housing counselors. If you need further assistance, please contact your servicer first, or call us at 1-800-232-6643.

Homebuyers, Owners, and Renters

*EXHIBIT B*

Menu

Home / Calculators & Tools / Fannie Mae Loan Lookup Results

# Fannie Mae Loan Lookup Results

## We found a match.

### Match results found for

**Name**
Corbin Young

**Address**
5530 Campbellton Rd

**City/State/Zip**
Atlanta, GA 30331

**Last 4 Digits of Social Security #**
****

**Mortgage Loan Closing Date**
2024-02-13

**Mortgage Servicer***
Citizens Bank, National Association

* The Company that collects your monthly payment. Check your mortgage statement to confirm the company and phone number for customer service.

### This means you may be eligible for certain Fannie Mae-only mortgage relief options.

Learn more by contacting a housing counselor or your mortgage servicer (the company listed on your mortgage statement). Contact your mortgage lender to see if you qualify for refinancing through RefiNow™ and if it's the best refinance option for you.

## Next steps you can take

### Understand mortgage relief options

If you're having trouble paying your mortgage, there are relief options to help you stay in your home while avoiding foreclosure.

Options to stay >

### Talk to a housing counselor

Get one-on-one help from a HUD-approved housing counselor. They're available to help you find options, work with your mortgage servicer, and recover from financial setbacks.

Contact a counselor >

**Fannie Mae**

*Exhibit C1*

# Fannie Mae 3Q Net Income of $3.9 Billion is 31st Consecutive Quarterly Profit

- *Net revenues[1] remained stable at $7.3 billion, with guaranty fee income up slightly on quarterly basis*
- *Illustrative return on average required CET1[2] capital of 10.3%, compared with 9.9% for second quarter*
- *Net worth grew to $105.5 billion; $92.0 billion added since the start of 2020*

**WASHINGTON, DC – October 29, 2025 –** Fannie Mae (FNMA/OTCQB) earned $3.9 billion for the third quarter of 2025, compared with $3.3 billion for the second quarter of 2025. Net revenues remained stable; the increase in net income from the previous quarter was driven primarily by reductions in the provision for credit losses and non-interest expense, partially offset by lower fair value gains. The Company's net worth increased to $105.5 billion as of September 30, 2025.

**William J. Pulte, Director, U.S. Federal Housing, and Chairman, Fannie Mae Board of Directors**
"Fannie Mae is operating with greater business focus than ever. Trimming $173 million in administrative expenses since the first quarter of 2025, we have grown our net worth to over $105 billion. Fannie Mae's strong leadership team continues to perform at a high level, with earnings up $542 million from the second quarter to $3.9 billion this quarter while reliably meeting the housing needs of borrowers and renters across the United States."

**Chryssa C. Halley, Chief Financial Officer, Fannie Mae:**
"We delivered $3.9 billion in net income for the third quarter and $10.8 billion year to date, underscoring the strength and resilience of our earnings. Net revenues remained steady at $7.3 billion this quarter, reflecting the consistency of our guaranty fee-driven business model. Our performance underscores our commitment to the long-term financial health of Fannie Mae."

More information, including access to the webcast featuring our earnings presentation, our 3Q 2025 Form 10-Q, and other disclosures, can be found on our Quarterly and Annual Results webpage at fanniemae.com/financialresults.

## Third Quarter 2025 Key Metrics

| | | |
|---|---|---|
| **$3.9 billion**<br>Net Income<br>($3.3 billion in 2Q 2025) | **$105.5 billion**<br>Net Worth<br>($101.6 billion in 2Q 2025) | **$7.3 billion**<br>Net Revenues[1]<br>($7.2 billion in 2Q 2025) |
| **$4.1 trillion**<br>Guaranty Book of Business<br>($4.1 trillion in 2Q 2025) | **29.3%**<br>Efficiency Ratio[3]<br>(31.5% in 2Q 2025) | **10.3%**<br>Illust. Return on Avg. Req. CET1[2]<br>(9.9% in 2Q 2025) |

## Business Impact and Quarterly Highlights

### Mortgage Acquisitions

*Enabled the financing of ~401,000 home purchases, refinances, and rental units in 3Q 2025*



| | 3Q 2024 | 4Q 2024 | 1Q 2025 | 2Q 2025 | 3Q 2025 |
|---|---|---|---|---|---|
| Total | 383K | 409K | 287K | 381K | 401K |
| Refinance | 50K | 73K | 50K | 68K | 61K |
| Purchases | 231K | 179K | 144K | 183K | 207K |
| Rental | 103K | 157K | 93K | 130K | 133K |

■ Refinance   ■ Purchases   ■ Rental

**$109 billion in liquidity** provided to mortgage market.

**First-time homebuyers** accounted for approximately half of our single-family purchase mortgages.

**Renters earning less than 100% of area median income** made up more than 80% of the multifamily units we financed.

**Low-income housing tax credit investments** expected to rise after annual investment limit increased to $2 billion, enabling greater affordable housing supply in underserved areas.

**2025 Dodd-Frank Act Stress Test** showed our ability to support the housing market during times of stress.

*Endnotes are presented on page 5*

*Exhibit C 2*

**Fannie Mae**

## FANNIE MAE

### (In conservatorship)
### Condensed Consolidated Statements of Operations and Comprehensive Income — (Unaudited)
(Dollars in millions, except per share amounts)

| | For the Three Months Ended September 30, | | For the Nine Months Ended September 30, | |
| --- | --- | --- | --- | --- |
| | 2025 | 2024 | 2025 | 2024 |
| Interest income: | | | | |
| Mortgage loans | $ 38,344 | $ 36,390 | $ 113,436 | $ 107,223 |
| Securities purchased under agreements to resell | 844 | 1,057 | 2,640 | 3,313 |
| Investments in securities and other | 789 | 565 | 2,328 | 1,549 |
| Total interest income | 39,977 | 38,012 | 118,404 | 112,085 |
| Interest expense: | | | | |
| Short-term debt | (154) | (137) | (362) | (462) |
| Long-term debt | (32,639) | (30,600) | (96,702) | (90,057) |
| Total interest expense | (32,793) | (30,737) | (97,064) | (90,519) |
| Net interest income | 7,184 | 7,275 | 21,340 | 21,566 |
| (Provision) benefit for credit losses | (338) | 27 | (1,308) | 507 |
| Net interest income after (provision) benefit for credit losses | 6,846 | 7,302 | 20,032 | 22,073 |
| Fair value gains, net | 13 | 52 | 347 | 979 |
| Fee and other income | 123 | 66 | 293 | 206 |
| Investment gains (losses), net | (1) | 12 | (9) | (28) |
| Non-interest income | 135 | 130 | 631 | 1,157 |
| Non-interest expense: | | | | |
| Salaries and employee benefits | (475) | (500) | (1,578) | (1,507) |
| Professional services, technology, and occupancy | (344) | (384) | (1,080) | (1,165) |
| Legislative assessments | (943) | (948) | (2,813) | (2,817) |
| Credit enhancement expense | (409) | (411) | (1,288) | (1,235) |
| Other income (expense), net | 25 | (136) | (331) | (416) |
| Total non-interest expense | (2,146) | (2,379) | (7,090) | (7,140) |
| Income before federal income taxes | 4,835 | 5,053 | 13,573 | 16,090 |
| Provision for federal income taxes | (976) | (1,009) | (2,736) | (3,242) |
| Net income | 3,859 | 4,044 | 10,837 | 12,848 |
| Other comprehensive income (loss) | (10) | 3 | (9) | — |
| Total comprehensive income | $ 3,849 | $ 4,047 | $ 10,828 | $ 12,848 |
| Net income | $ 3,859 | $ 4,044 | $ 10,837 | $ 12,848 |
| Dividends distributed or amounts attributable to senior preferred stock | (3,849) | (4,047) | (10,828) | (12,848) |
| Net income (loss) attributable to common stockholders | $ 10 | $ (3) | $ 9 | $ — |
| Earnings per share: | | | | |
| Basic | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| Diluted | 0.00 | 0.00 | 0.00 | 0.00 |
| Weighted-average common shares outstanding: | | | | |
| Basic | 5,867 | 5,867 | 5,867 | 5,867 |
| Diluted | 5,893 | 5,867 | 5,893 | 5,893 |

See Notes to Condensed Consolidated Financial Statements in the Third Quarter 2025 Form 10-Q

*Payments To Government (U.S. Treasury)*

_Exhibit D1_      12 U.S.C. § 4512(g)(2) - Google Search

 G

AI Mode ▼   All   Images   News   Maps   More ▼

12 U.S.C. § 4512(g)(2)

12 U.S.C. § 4512(g)(2) is a section of the U.S. Code that prohibits the Director of the Federal Housing Finance Agency (FHFA) from holding any office, position, or employment in any regulated entity or entity-affiliated party. ✐

## Statutory Limitation

The specific text of the statute at 12 U.S.C. § 4512(g)(2) states that the Director of the Agency may not:

- hold any office, position, or employment in any regulated entity or entity-affiliated party. ✐

This provision is one of several limitations outlined in subsection (g) of section 4512, which are designed to prevent conflicts of interest for the Director and Deputy Directors of the FHFA. The term "regulated entity" refers to Fannie Mae, Freddie Mac, and the Federal Home Loan Banks. ✐

For further details on this section of law, you can consult the official U.S. Code on the **House.gov** or **Law.Cornell.Edu** websites. ✐

AI responses may include mistakes. For legal advice, consult a professional. Learn more



5 sites

**Page 1646 TITLE 12—BANKS AND BANKING § 4512 - GovInfo**
(1) Appointment. The Director shall be appointed by the President, by and with the advice and consent of the Senate, from among in...
⬤ GovInfo (.gov)  ⋮

12 U.S. Code § 4512 - Director - Law.Cornell.Edu

Ask anything

+                                                                              🎤

*Exhibit D2*

 **G**     AI Mode ▼   All   Images   News   Maps   More ▼                     ⚗   ⠿   **C** 

What are some examples of 'entity-affiliated parties' under 12 U.S.C. § 4512(g)?

Under 12 U.S.C. § 4502(11), an "entity-affiliated party" (EAP) is defined through a broad range of individuals and organizations that have a functional or structural relationship with a regulated entity (specifically Fannie Mae, Freddie Mac, or any Federal Home Loan Bank). ✐

Examples of entity-affiliated parties include various individuals and entities connected to the regulated entity. These can be insiders like directors, officers, employees, or controlling stockholders. External partners such as shareholders, affiliates, consultants, or joint venture partners are also included. ✐

Certain service providers, including attorneys, appraisers, or accountants, can be considered EAPs if they knowingly or recklessly contribute to violations causing significant financial loss to the regulated entity. Not-for-profit corporations that primarily receive funding from a regulated entity are also covered. Additionally, the Office of Finance is specifically designated as an entity-affiliated party. Other individuals actively involved in the affairs of a regulated entity may be determined to be EAPs by the FHFA Director on a case-by-case basis. ✐

It is important to note that a member of a Federal Home Loan Bank (like a local bank or credit union) is not considered an entity-affiliated party simply because they are a shareholder or receive advances from the Bank. ✐

AI responses may include mistakes. For legal advice, consult a professional. Learn more

&lt;   👍   👎

↳   **What legal actions can be taken against an entity-affiliated party?**
